## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

MADELINE GARCÍA TORRES,

    Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 22-1481 (MEL)

## OPINION AND ORDER

### I.    PROCEDURAL AND FACTUAL BACKGROUND

Pending before the court is Ms. Madeline García Torres's ("Plaintiff") appeal from the decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 3. On March 9, 2020, Plaintiff filed an application for Social Security benefits, alleging that she initially became unable to work due to disability on February 13, 2020 (the "onset date"). Tr. 152. Prior to the onset date, Plaintiff's past relevant work was as a cashier and a retail store clerk. Tr. 161. Plaintiff met the insured status requirements of the Social Security Act through March 31, 2025. Tr. 154. Plaintiff's disability claim was denied initially on September 10, 2020, and upon subsequent reconsideration on November 20, 2020. Tr. 152.

Thereafter, Plaintiff requested a hearing which was held on May 6, 2021, before an Administrative Law Judge (the "ALJ").[1] Tr. 152. On June 3, 2021, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 162. Thereafter, Plaintiff requested review of

---

[1] The ALJ held a telephone hearing "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." Tr. 152.

the ALJ's decision. *See* Tr. 578–79. The Appeals Council denied Plaintiff's request for review,

rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review.

Tr. 1. Plaintiff sought judicial review on October 11, 2022. ECF No. 3. Both parties have filed

supporting memoranda. ECF Nos. 19, 22.

## II.    LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for

disability benefits, a district court "shall have power to enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing [that decision], with or without

remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to

determining whether the ALJ employed the proper legal standards and whether her factual

findings were founded upon sufficient evidence. Specifically, the court "must examine the record

and uphold a final decision of the Commissioner denying benefits, unless the decision is based

on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d

333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15,

16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere

scintilla of evidence but may be somewhat less than a preponderance' of the evidence."

*Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively

determined that plaintiff is or is not disabled at any step in the evaluation process, then the

analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ

cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the

analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined

whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R.

§ 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step

two requires the ALJ to determine whether plaintiff has "a severe medically determinable

physical or mental impairment" or severe combination of impairments. 20 C.F.R.

§ 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's

impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found

to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether

plaintiff's impairment or impairments prevent her from doing the type of work she has done in

the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in

the case record to determine the most the individual can do in a work setting despite the

limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This

finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ

concludes that plaintiff's impairment or impairments do prevent her from performing her past

relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether

plaintiff's RFC, combined with her age, education, and work experience, allows her to perform

any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

4

ALJ determines that there is work in the national economy that plaintiff can perform, then

disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III.   THE ALJ'S DECISION

In the ALJ's decision dated June 3, 2021, the ALJ found that Plaintiff had met the insured

status requirements of the Social Security Act through March 31, 2025, the date last insured. Tr.

154, 162. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity from the onset date of February 13, 2020, through the date last

insured. Tr. 154. At step two, the ALJ determined that Plaintiff had the following severe

impairments: "[c]ervical spine disorder; [l]umbar spine disorder; OSA (obstructive sleep apnea);

GAD (generalized anxiety disorder); and [m]ajor depressive disorder." Tr. 154. At step three, the

ALJ found that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. Tr. 155. Next, the ALJ determined that during the relevant period:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is capable of frequently reaching overhead to the left, and frequently reaching overhead to the right. For all other reaching, she can reach frequently to the left, and can reach frequently to the right. [Plaintiff] can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, stoop frequently. [She] can work at unprotected heights occasionally, mov[e] mechanical parts occasionally and operat[e] a motor vehicle occasionally and in moderate noise. [Plaintiff] [i]s able to perform simple, routine tasks; [u]se [j]udgment: [i]s able to perform simple work-related decisions; able to interact with [s]upervisors: Frequent; is able to interact with [c]oworkers: Frequent; is able to interact with the [p]ublic: Never[;] [d]ealing with changes in [w]ork [s]etting: [i]s able to make simple work-related decisions.

Tr. 157. At step four, the ALJ determined that during the relevant period, Plaintiff was not

capable of performing her past relevant work as a cashier or retail store clerk. Tr. 161. At step

five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work

experience to a vocational expert ("VE"). Tr. 161–62. The VE testified that a hypothetical

5

individual with a similar RFC would be able to perform the following representative

occupations: laundry sorter, folder, and labeler. Tr. 162. Because there was work in the national

economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 162.

IV.    LEGAL ANALYSIS

Plaintiff advances one argument challenging the ALJ's assessment at step three and two

arguments challenging the ALJ's assessment of her RFC. Plaintiff first contends that the ALJ

erred at step three when the ALJ failed to consider whether Plaintiff's fibromyalgia equaled a

medically determinable impairment. ECF No. 19 at 9. Plaintiff next asserts that the ALJ erred in

Plaintiff's RFC assessment when the ALJ erroneously discounted the opinion of Plaintiff's

treating psychiatrist, Dr. Miljan I. Rosado ("Dr. Rosado") and when the ALJ failed to consider

the combined effects of her non-severe impairments. ECF No. 19 at 12–13.

**A.  Plaintiff has failed to show prejudicial error in regard to the ALJ's lack of fibromyalgia assessment.**

Plaintiff argues that the ALJ erred by failing to discuss Plaintiff's fibromyalgia and

determine whether said condition equaled a medically determinable impairment under step three

of the sequential analysis. ECF No. 19 at 9. Plaintiff bears the burden of showing that her

fibromyalgia is a medically determinable impairment. *Vazquez-Reinat v. Comm'r of Soc. Sec.*,

No. CV 19-1822, 2021 WL 3214392, at *7 (D.P.R. July 29, 2021). "Fibromyalgia is defined as a

syndrome of chronic pain of musculoskeletal origin but uncertain cause." *Id.* (quoting *Rodríguez*

*v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 70631, at *9 (D.P.R. Mar. 31, 2021) (internal

quotations and alterations omitted)). The Commissioner has promulgated rules regarding the

analysis of fibromyalgia claims at step three. *See* SSR 12-2p, 2012 WL 3104869. The rules lay

out the general criteria to establish that a person has a medically determinable impairment of

fibromyalgia:

> We will find that a person has a[ medically determinable impairment] of
> [fibromyalgia] if the physician diagnosed [fibromyalgia] and provides the evidence
> we describe in section II.A. [the 1990 American College of Rheumatology ("ACR")
> Criteria for the Classification of Fibromyalgia [(the "1990 Criteria")] or section II.
> B. [the 2010 ACR Preliminary Diagnostic Criteria [(the "2010 Criteria")], and the
> physician's diagnosis is not inconsistent with the other evidence in the person's
> case record.

SSR 12-2p, 2012 WL 3104869, at *2.

To satisfy the 1990 Criteria, evidence must be presented showing (1) "[a] history of

widespread pain . . . that has persisted (or that persisted) for at least 3 months," (2) "[a]t least 11

positive tender points on physical examination," and (3) "that other disorders that could cause

the symptoms or signs were excluded." SSR 12-2p, 2012 WL 3104869, at *2–3. The 2010

Criteria, on the other hand, requires evidence showing (1) "[a] history of widespread pain"; (2)

"[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring

conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"),

waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; (3) "that other

disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring

conditions were excluded." SSR 12-2p, 2012 WL 3104869, at *3.

Here, as Plaintiff correctly notes, the ALJ's decision does not make any explicit reference

to fibromyalgia: it is not mentioned as an impairment at steps two and three nor is it explicitly

discussed in the RFC determination.[2] Tr. 154, 158–160. To satisfy her burden, Plaintiff cites to

---

[2] While the ALJ did not list fibromyalgia as an impairment at step two, any error would be harmless. Step two
merely requires that the ALJ determine whether the plaintiff has any severe impairment before proceeding to the
subsequent steps. *Vazquez-Velazquez v. Comm'r of Soc. Sec.*, No. CV 19-1920, 2021 WL 9275723, at *5 (D.P.R.
Sept. 23, 2021) (citing *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010)). Consequently, if
the ALJ finds that at least one of the plaintiff's impairments is severe, then the step two inquiry has already been
resolved in the plaintiff's favor and the inquiry moves ahead. *Id.* (citing *Hickman v. Comm'r of Soc. Sec.*, 399 F.
App'x 300, 302 (9th Cir. 2010)). Here, although the ALJ did not list fibromyalgia as an impairment, the ALJ

medical notes in the record suggesting that she was diagnosed with fibromyalgia. Tr. 46, 255, 892. However, Plaintiff's argument that her fibromyalgia is a medically determinable impairment falls short because she fails to point to evidence indicating that either the 1990 or 2010 Criteria is satisfied. Accordingly, Plaintiff has not shown that the ALJ's omission in assessing whether her fibromyalgia equaled a medically determinable impairment was harmful error. *Vititoe v. Colvin*, 549 F. App'x 723, 729–30 (10th Cir. 2013) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.")).

To the extent that Plaintiff argues that the ALJ also erred in making the RFC assessment by not considering her fibromyalgia, that argument also fails. The plaintiff bears the burden of providing evidence to establish how her impairments limit her RFC. 42 U.S.C. § 423(d)(5)(A); *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). While the ALJ did not explicitly discuss fibromyalgia in the RFC assessment, the ALJ did consider Plaintiff's fibromyalgia-like symptoms, that is, Plaintiff's neck, back, hand, and leg pain. Tr. 158, 160. Plaintiff does not cite to the record to suggest that the ALJ failed to consider her symptoms consistent with fibromyalgia. Thus, any error to explicitly consider fibromyalgia in the RFC assessment was harmless.

**B.  The ALJ's adequately considered Dr. Rosado's psychiatric report.**

Plaintiff asserts that the ALJ improperly discounted the medical opinion of her treating psychiatrist Dr. Rosado. ECF No. 19 at 13. The Commissioner responds arguing that Dr. Rosado did not make a medical opinion under the pertinent regulation. ECF No. 22 at 11. Dr. Rosado's psychiatric report states that Plaintiff had severe major depression, anxiety disorder, and panic

---

resolved step two in Plaintiff's favor when the ALJ found that she had other severe impairments. Hence, any error at step two was harmless.

disorder. Tr. 41. Additionally, according to the ALJ, Dr. Rosado opines that Plaintiff was dysfunctional due to her disorganized thoughts and severe depression. Tr. 159. At its outset, part of Plaintiff's argument is based on an incorrect application of law. Specifically, Plaintiff claims that Dr. Rosado's report was entitled to greater deference because he was her treating psychiatrist. ECF No. 19 at 15. Plaintiff incorrectly cites to 20 C.F.R. 404.1527(c), 416.927(c) to explain what factors—prioritizing the examining and treatment relationship—should be considered in evaluating Dr. Rosado's opinion. ECF No. 19 at 15. However, 20 C.F.R. § 404.1527 notes that the treating physician rule was rescinded in 2017. Because Plaintiff's claim was filed after 2017, on March 9, 2020, Plaintiff's reliance on the treating physician rule is unfounded.

While 20 C.F.R. § 404.1520c governs the analysis of medical opinions for claims filed after March 26, 2017, the Commissioner argues that this analysis is not necessary because Dr. Rosado's report is not a medical opinion under 20 C.F.R. § 404.1513(a)(2), which states that

> [a] medical opinion is a statement from a medical source [(1)] about what you can still do despite your impairment(s) *and* [(2)] whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> . . . .
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> . . . .

ECF No. 22 at 11; 20 C.F.R. § 404.1513(2) (emphasis added). Dr. Rosado's report does not qualify as a medical opinion. While it does indicate Plaintiff's limitations in her ability to concentrate, remember things, and work under pressure, the report does not state what Plaintiff

can still do despite her impairments.[3] Tr. 40–41. Moreover, when the report does mention

Plaintiff's limitations, it simply makes broad assertions such as "[d]oes not tolerate pressure[,

d]oes not tolerate . . . instructions[,] . . . [and n]o attention or concentration." Tr. 410. These

statements in and of themselves provide barely any guidance as to what Plaintiff can still do in

the workplace and offer little insight, if any, into Plaintiff's functional limitations.[4] Other

statements in the report, such as "[c]annot do any work task because [Plaintiff's] functioning is

poor" and "[c]annot work a normal work[day]," were not required to be discussed in the ALJ's

opinion because the "determination [of] whether a claimant is unable to work is reserved for the

Commissioner." *Pérez-Serrano v. Comm'r of Soc. Sec.*, No. CV 19-1499, 2021 WL 2031979, at

*9 (D.P.R. May 21, 2021). As previously alluded to, the ALJ states in her decision that

Dr. Rosado opines that Plaintiff was dysfunctional. Tr. 159. Regardless of whether the term

"dysfunctional" appears in the report, a reasonable inference could be drawn that the ALJ

implicitly considered all the report's statements above and concluded that Dr. Rosado assessed

that Plaintiff was dysfunctional.

Although the ALJ's decision suggests that Dr. Rosado "provided an 'opinion' in the

colloquial sense, in the context of these disability benefits proceedings, his [psychiatric] report

is" better characterized as "other medical evidence" under 20 C.F.R. 404.1513(a)(3). *Broaddus v.*

*Kijakazi*, No. 3:20-CV-01418, 2022 WL 1096624, at *9 (M.D. Pa. Apr. 12, 2022). "Other

---

[3] The psychiatric report does state that Plaintiff is cooperative; however, that note is under the following heading: "behavior and interaction with therapist" and "this section should be based on the latest interview." Tr. 408. Hence, it would be a stretch to infer that this statement alone signifies that Plaintiff could cooperate with others in a work environment because this statement is solely articulating Dr. Rosado's observations from one interview and refers to an interaction during a therapy session, not Plaintiff's ability to interact in the workplace.

[4] *Cf. Michael H. v. Saul*, No. 5:20-CV-417, 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021) ("This note presents a close call on what is considered a medical source statement. While it discusses Plaintiff's limitations, it does not discuss what Plaintiff is still capable of doing. . . . Under the previous regulations, what a plaintiff could do in spite of their impairments was just one of the listed factors tending to establish the medical provider's judgments about the nature and severity of the plaintiff's impairments. *See* 20 C.F.R. § 404.1527(a)(1). However, under the new regulations, a medical source opinion must do both. *See* 20 C.F.R. § 404.1513(a)(2).").

medical evidence is evidence from a medical source that is not objective medical evidence or a

medical opinion, including judgments about the nature and severity of your impairments, your

medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."

20 C.F.R. § 404.1513(a)(3). Furthermore, unlike a medical opinion, the regulations place no

"require[ment] to articulate how persuasive [the ALJ] found Dr. [Rosado's psychiatric report]

because it constituted 'other medical evidence.'" *Rodin v. Comm'r of Soc. Sec.*, No. 1:21-CV-

00900, 2023 WL 3293423, at \*18 (E.D. Cal. May 5, 2023); *accord Broaddus*, 2022 WL

1096624, at \*9. Hence, contrary to Plaintiff's assertion, the ALJ was not required to further

discuss Dr. Rosado's report. Consequently, Plaintiff's arguments challenging the ALJ's

reasoning to discount Dr. Rosado's report need not be further addressed. ECF No. 19 at 16.

Plaintiff also asserts that the ALJ incorrectly gave more weight to the opinion of

consulting psychologist Mr. Elliot Santiago ("Mr. Santiago"), without a proper discussion in the

decision, particularly with respect to the clear difference of opinion compared to Dr. Rosado.

ECF No. 19 at 16. As noted above, Dr. Rosado's report was not a medical opinion, and the ALJ

was not required to assign any type of weight to it. Thus, it was not improper for the ALJ to

assign more weight to a medical opinion to which she was required to assign weight compared to

other medical evidence that she was not required to assign weight to. To the extent Plaintiff

argues that the ALJ was required to provide a more elaborate discussion regarding

Mr. Santiago's opinion, that argument cannot prosper. Section 404.1520c(b)(1) of Title 20

C.F.R. notes that an ALJ is not required to articulate all of the factors considered when assessing

a medical opinion: "Because many claims have voluminous case records containing many types

of evidence from different sources, it is not administratively feasible for us to articulate in each

determination or decision how we considered all of the factors for all of the medical opinions . . .

11

in your case record." 20 C.F.R. § 404.1520c(b)(1). Indeed, an ALJ is required to explain only

how a medical opinion is supported and consistent with other record evidence. *Id.* at §

404.1520c(b)(2). Here, the ALJ explained in her decision that Mr. Santiago's opinion is

persuasive because it is consistent with the examination findings and supported by the treatment

record which reflected moderate limitations. Tr. 159. Specifically, the ALJ discussed that Mr.

Santiago's clinical findings show that Plaintiff was moderately diminished in her ability to

perform daily activities, keep attention, function socially, and cope with stress. Tr. 159, 404–05.

Mr. Santiago further notes the bases for his opinion, such as, among other things, mental exams

indicating difficulty in Plaintiff's immediate and short-term memory, his observations of

Plaintiff's anxiety during the interview, and Plaintiff's statements that she was able to prepare

simple meals, watch TV, and attend medical appointments. Tr. 159, 403–04. This level of

discussion was enough. Accordingly, the ALJ did not err in assessing the statements in Dr.

Rosado's psychiatric report or discussing Mr. Santiago's opinion.

## C. The ALJ erred in considering Plaintiff's non-severe limitations in the RFC determination.

Plaintiff contends that the ALJ failed to consider her non-severe limitations of high blood

pressure, osteopenia (rule out osteoporosis), and migraine headaches. ECF No. 19 at 12. An ALJ

is required to consider all of a plaintiff's impairments whether severe or non-severe in order to

determine their combined effect on the RFC. *Smith v. Saul*, No. 18-CV-1086, 2019 WL 5957294,

at *3 (D.N.H. Nov. 13, 2019) ("In assessing whether a claimant is disabled, an ALJ must

consider the combined effect of all of a claimant's impairments, regardless of whether those

impairments are individually classified as severe." (citing *McDonald v. Sec'y Health & Human

Servs.*, 795 F.2d 1118, 1126 (1st Cir. 1986) (internal quotations and alterations omitted))); 20

C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of

which we are aware, including your medically determinable impairments that are not 'severe.'").

Here, the ALJ only explicitly mentions Plaintiff's non-severe impairments at step two

then briefly states that "these conditions were not shown to impose functional limitations." Tr.

154. No further inquiry into Plaintiff's non-severe impairments can be found in the ALJ's RFC

section of her decision. Indeed, the ALJ's RFC discussion does not use the words "high blood

pressure," "osteopenia," and "migraine headaches." Tr. 158–160. Plaintiff cites to *Smith v. Saul*

to further support her contention. ECF No. 19 at 13. In *Smith*, the United States District Court for

the District of New Hampshire concluded that the ALJ erred when formulating the RFC because

the ALJ's RFC discussion failed to mention claimant's non-severe impairments of migraines,

Chiari malformation, and anxiety. *Smith*, 2019 WL 5957294, at *4 (citation omitted). Thus, the

district court took the ALJ's omission to mean that she considered only claimant's severe

impairment of fibromyalgia. *Id.* This was error because the ALJ "must provide adequate

explanation to show that he considered the combined effect of the impairments as to allow

proper judicial review." *Id.* (internal quotations omitted). The court emphasized that the

interaction of mental conditions, such as depression and anxiety, with physical conditions, such

as fibromyalgia, can result in increased pain and suffering. *Id.*

The Commissioner argues that the instant action is distinguishable from *Smith* because

the ALJ in the present case identified both mental and physical severe impairments and included

both mental and physical limitations in the RFC. ECF No. 22 at 8–9. While this point is well

taken, it does not address the underlying problem that just like the ALJ in *Smith*, the ALJ in this

case also failed to discuss Plaintiff's non-severe impairments in the RFC assessment. "This

suggests that the ALJ did not include [Plaintiff's] non-severe impairments in [the] RFC

calculation and only considered her severe" impairments. *Smith*, 2019 WL 5957294, at \*4 (citation omitted). The Commissioner further contends that any error from these omissions would be harmless because the ALJ limited Plaintiff to work in moderate noise to compensate for her migraines. ECF No. 22 at 9. Indeed, the ALJ's examination of the VE at Plaintiff's hearing reasonably indicates that she included the moderate noise limitation to account for Plaintiff's migraines. Tr. 199. To further bolster his argument, the Commissioner points to the RFC assessments of the State agency medical consultants, who determined that Plaintiff's migraines were non-severe and considered her migraines in forming the RFC and which the ALJ relied on in making her RFC assessment. Tr. 160, 451, 461, 468, 476, 485.

The problem with the Commissioner's arguments is that they only show that the ALJ considered Plaintiff's migraines in isolation; however, nothing that the Commissioner points to suggest that Plaintiff's other non-severe limitations (i.e., osteopenia and high blood pressure) were considered at all in the RFC assessment. Nor does the evidence that the Commissioner cites reasonably indicates that Plaintiff's migraines were considered in combination with all other impairments, both severe and non-severe.[5] Accordingly, the ALJ's lack of discussion regarding Plaintiff's non-severe impairments was not harmless error. By failing to analyze Plaintiff's non-severe impairments in combination with any other impairments in the RFC determination, the ALJ committed error which merits remand in order for the ALJ to properly account for the combined effect, if any, which Plaintiff's migraine headaches, osteopenia, and high blood pressure may have had on her RFC.

---

[5] While an argument could be made that the ALJ did not need to further assess Plaintiff's non-severe impairments because she states that "these conditions were not shown to impose functional limitations," it is unreasonable to take that statement at face value when it is directly contradicted by the fact that the ALJ included a moderate noise limitation to account for Plaintiff's non-severe migraine headaches. Tr. 154.

V.      CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner regarding Plaintiff's

RFC was not based on substantial evidence because it does not indicate that Plaintiff's non-

severe migraine headaches, osteopenia, and high blood pressure were taken into account in

combination with other impairments for purposes of the RFC determination. Therefore, the

Commissioner's decision is VACATED, and the case REMANDED so that the ALJ may, among

other things, fully consider the evidence regarding Plaintiff's medically determinable

impairments, both severe and non-severe, when making the RFC determination.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of April, 2024.

s/Marcos E. López
U.S. Magistrate Judge
